OVERTON, Justice.
This is an appeal from the decision in B.J.Y. v. M.A., 594 So.2d 816 (Fla. 1st DCA 1992), in which the district court declared section 742.031, Florida Statutes (1991), to be unconstitutional to the extent that it eliminates a putative father’s right to a jury trial in paternity proceedings. The district court also certified to this Court the following question as one of great public importance:
WHETHER SECTION 742.031, FLORIDA STATUTES, VIOLATES ARTICLE I, SECTION 22, OF THE FLORIDA CONSTITUTION BY PRECLUDING A JURY TRIAL ON THE ISSUE OF PATERNITY[.]
Id. at 818. We have jurisdiction. Art. V, § 3(b)(1) & (4), Fla. Const. We approve the district court's decision and answer the question in the affirmative.
The relevant facts reflect that B.J.Y. filed a complaint against M.A. seeking a determination of the paternity of her child and an award of child support, in accordance with section 742.031, Florida Statutes (1991). M.A. filed an answer in which he denied being the father of the minor child and requested a jury trial. The trial judge granted M.A.’s request for a jury trial, finding section 742.031 to be unconstitutional on the grounds that it denied M.A. the right to a jury trial as guaranteed by *1062 article I, section 22, of the Florida Constitution. Review was sought by certiorari in the district court, which, in denying the petition, expressly approved the holding that the statute is unconstitutional and certified the aforementioned question.
To properly address whether article I, section 22, of the Florida Constitution secures a right to a jury trial on the issue of paternity for the putative father, it is necessary to review the historical foundation of the right to a jury trial in this state and the legislative history of a paternity proceeding.

Right to a Jury Trial

The right to a jury trial is set forth in the Declaration of Rights of the Florida Constitution under article I, section 22, which states: “The right of trial by jury shall be secure to all and remain inviolate.” A similar provision has been included in each of our constitutions, beginning with the Constitution of 1838, which became effective in 1845. In the 1838 Constitution, the trial by jury provision read as follows: “[T]he right of trial by jury, shall for ever [sic] remain inviolate.” Art. I, § 6, Fla. Const. (1838). In interpreting this provision, this Court has made it clear that the constitution secures to the citizens of this state the right to a jury trial in all types of proceedings in which a jury trial was a matter of right before the adoption of the constitution. See Hunt v. City of Jacksonville, 34 Fla. 504, 16 So. 398 (1894). The question has also been addressed in the context of whether the right to a jury trial applies only to common law actions as they existed before the adoption of the constitution or to both common law and statutory actions as they existed at the time the constitution was adopted. In Hathorne v. Panama Park Co., 44 Fla. 194, 196, 32 So. 812, 813 (1902), this Court stated that our constitution
guarantees to the citizens a right of trial by jury only in those cases where at the time of the adoption of the constitution, the law gave that right; and not in those cases where the right, and the remedy with it, are thereafter created by statute, nor where the cause was already the subject of equity jurisdiction.
(Emphasis added.) In Kluger v. White, 281 So.2d 1, 4 (Fla.1973), we considered the abolishment of causes of action and stated that
where a right of access to the courts for redress for a particular injury has been provided by statutory law predating the adoption of the Declaration of Rights of the Constitution of the State of Florida, or where such right has become a part of the common law of the State pursuant to Fla.Stat. § 2.01, F.S.A., the Legislature is without power to abolish such a right without providing a reasonable alternative to protect the rights of the people of the State to redress for injuries, unless the Legislature can show an overpowering public necessity for the abolishment of such right, and no alternative method of meeting such public necessity can be shown.
(Emphasis added.) In In re Forfeiture of 1978 Chevrolet Van, 493 So.2d 433 (Fla.1986), this Court again explained that the rights secured included not only actions at common law but also statutory actions in which the right to a jury trial existed at the time the constitution was adopted. In that case we expressly stated:
The constitutional right to a trial by jury is not to be narrowly construed. This right is not limited strictly to those specific proceedings in which it existed before the adoption of our constitution, but should be extended to proceedings of like nature as they may arise.
Id. at 435 (citations omitted). Consequently, the issue of whether one is entitled to a jury trial in a paternity action turns on whether such a right existed by statute or under the common law in effect for “proceedings of like nature” at the time the Constitution of Florida was adopted.

The Legislative 'History of Paternity Actions

Before the Constitution became effective in 1845, the territorial law in Florida included the Bastardy Act of 1828. This act permitted a “single woman” to bring a bastardy complaint against the alleged fa *1063 ther of her illegitimate child. The alleged father was then brought before a justice of the peace and required to post bond to ensure his appearance in court. Under the Act, the issue of paternity was to be tried before a jury and if paternity was established, the father was required to pay birth expenses and child support. In 1893, the Act was amended to permit the father to be imprisoned for a maximum of one year if he refused or failed to comply with a judgment in a bastardy proceeding.
The form of the Act remained unchanged until 1951 when the arrest and imprisonment provisions were removed from the statute, and the proceeding was established as a civil one in which an “unmarried woman” could bring a paternity proceeding in equity. The arrest and imprisonment provisions were replaced with a ne exeat process in which the court, in its discretion, could issue a writ of ne exeat conditioned on a bond to guarantee the presence of the defendant within the state. In addition, the statute provided that the issue of paternity was to be determined by the court except that, "[u]pon request of either party, the issue of the paternity of such child [could] be tried by jury.” § 742.031, Fla. Stat. (1953). If the defendant in the paternity action was found to be the father of the child, he was required to pay birth expenses in addition to child support.
In 1986, the legislature amended the statute again, this time changing the language of the statute by (1) removing the provision for trial by jury upon request so that the issue of paternity would be determined solely by the judge and (2) broadening the statute to permit “any man who has reason to believe he is the father of a child” to bring a paternity proceeding. § 742.011, Fla.Stat. (Supp.1986). Additionally, the statute provides that if paternity is established, the court shall order payment of birth expenses and payment of child support by either or both parents.

The Instant Case

In this proceeding, B.J.Y. argues that the nature of a paternity proceeding has been changed by the statutory amendments so that the proceeding is now solely in equity. She asserts that a proceeding under the 1828 Bastardy Act was clearly quasi-criminal in nature and that a paternity proceeding is now strictly an equitable civil action to which the constitutional right of a jury trial does not extend. We disagree.
More than one hundred years ago, this Court, in E.N.E. v. State ex rel. Lulu E., 25 Fla. 268, 269-70, 6 So. 58, 59 (1889), discussed the nature of bastardy proceedings, stating:
While the decisions of this court in construing the bastardy statute have characterized the proceeding it authorizes as quasi criminal, it is only because the preliminary steps before a magistrate to get the accused bound over to the Circuit Court for trial makes it so. When the case reaches that court it loses its criminal aspect, and is henceforth a civil action between the prosecutrix and the defendant, insomuch that the judgment and costs are given for or against one or the other according to success or failure on the issues tried between them.
We also noted in that decision that “[i]t is not necessary to arraign the defendant, but he answers the complaint, and from thence the proceedings are of a character and are conducted in the manner of a civil action. Prosecutions under this statute partake partly of a criminal and partly of a civil character.” Id. at 270, 6 So. at 59.
Given the history of paternity proceedings, we find that the nature of a paternity proceeding has not changed since 1828. The proceedings under the Bastardy Act of 1828 constituted a paternity action, and the proceedings under the statute today constitute a paternity action. Although the process for pursuing a paternity action has changed somewhat over the years to bring the process into the present day social environment, the proceeding and its purpose are still the same — to establish paternity for the purpose of support. As we stated in In re Forfeiture of 1978 Chevrolet Van, the right to a jury trial “is not limited strictly to those specific proceedings in which it existed before the adoption of our constitution, but should be extended to proceedings of like nature as they may arise.” *1064 493 So.2d at 435. Consequently, we find that article I, section 22, of the Florida Constitution preserves the right to a jury trial in paternity proceedings.[1] We note that under similar circumstances the Supreme Court of Minnesota, in Smith v. Bailen, 258 N.W.2d 118 (Minn.1977), reached the same conclusion.[2]
Accordingly, we approve the district court’s finding that article I, section 22, of the Florida Constitution preserves the right to a jury trial in paternity proceedings, and we declare unconstitutional the portion of section 742.031, Florida Statutes, that requires paternity proceedings to be tried only by the judge. This holding mandates the restoration of the portion of the statute providing for the right to a jury trial as it existed before the statute was amended in 1986. The remainder of the statute as amended in 1986 shall be unaffected. For the reasons expressed, we direct that this cause be remanded to the trial court for further proceedings in accordance with this opinion.
It is so ordered.
BARKETT, C.J., and McDONALD, SHAW, GRIMES, KOGAN and HARDING, JJ., concur.

. We recognize that, of the other jurisdictions that have addressed this issue, a majority have approved the elimination of a jury trial in paternity proceedings. See Robertson v. Apuzzo, 170 Conn. 367, 365 A.2d 824, cert. denied, 429 U.S. 852, 97 S.Ct. 142, 50 L.Ed.2d 126 (1976); Doe v. Roe, 5 Haw.App. 558, 705 P.2d 535 (1985); Comish v. Smith, 97 Idaho 89, 540 P.2d 274 (1975); People ex rel. Cizek v. Azzarello, 81 IIl.App.3d 1102, 37 IlI.Dec. 84, 401 N.E.2d 1177 (1980); State ex rel. Mayer v. Pinkerton, 185 Kan. 68, 340 P.2d 393 (1959); Miller v. Russell, 593 S.W.2d 598 (Mo.App.1979); Commonwealth ex rel. Miller v. Dillworth, 204 Pa.Super. 420, 205 A.2d 111 (1964); Hyatt v. Hill, 714 P.2d 299 (Utah 1986); State ex rel. Goodner v. Speed, 96 Wash.2d 838, 640 P.2d 13, cert. denied, 459 U.S. 863, 103 S.Ct. 140, 74 L.Ed.2d 119 (1982). However, those cases can be distinguished because paternity proceedings were not recognized at common law in those jurisdictions or there was no right to a jury trial in a paternity proceeding at the time the state constitution was adopted.

. In that case, the Minnesota court recognized that the right to a jury trial existed at the time Minnesota's constitution was adopted. The court held that such right must remain inviolate unless (1) the legislature made a substantial change in the cause of action and (2) the remedy provided that the cause of action no longer existed as it did when the constitution was adopted. The court held that the quasi-criminal language that had been deleted did not substitute a new and fundamentally different remedy upon the cause of action because a paternity proceeding had been consistently recognized as being civil in nature.